**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SAN GABRIEL VALLEY MEDICAL CENTER, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROBERT F. KENNEDY, JR.,** SECRETARY OF HEALTH AND HUMAN SERVICES,[1]<br><br>Defendant. | Case No. 24-cv-800 (CRC) |
| **LAKE CHARLES MEMORIAL HOSPITAL, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROBERT F. KENNEDY, JR.,** SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Case No. 24-cv-972 (CRC) |

**MEMORANDUM OPINION**

Not every Medicare payment rule is a final Medicare payment determination. In 2023, the Department of Health and Human Services ("HHS") issued a rule clarifying how it calculates Medicare reimbursements for hospitals that serve disproportionate numbers of low-income patients. Plaintiffs in these two consolidated cases—comprising scores of such hospitals across the country—appealed that rule directly to the Provider Reimbursement Review Board, which may review final payment determinations if challenged within 180 days. The Board dismissed

[1] Plaintiffs filed both of these actions against former Secretary of Health and Human Services Xavier Becerra. Per Fed. R. Civ. P. 25(d), Secretary Becerra's successor, Secretary Robert F. Kennedy, Jr., has been automatically substituted as the defendant in both cases.

their appeals, finding that the rule was not a final payment determination and, in any event, the appeals were untimely. Plaintiffs now ask this Court to reverse those dismissals and vacate the rule. But controlling precedent forecloses the first request, and the Court lacks jurisdiction to consider the second. The Court will therefore grant HHS's motion to dismiss.

## I. Background

### A. Statutory Background

"The Medicare program provides Government-funded health insurance to over 64 million elderly or disabled Americans." Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr., 597 U.S. 424, 428 (2022). The program is administered by the Centers for Medicare and Medicaid Services ("CMS") within HHS and is divided into four "parts." Servier Pharms. LLC v. Kennedy, 187 F.4th 669, 675 (D.C. Cir. 2026). Two parts are relevant here: "Part A provides Medicare enrollees with government-administered health insurance through which the Government makes direct payments to hospitals for healthcare services provided," while "Part C provides enrollees with government-subsidized enrollment in private insurance plans." Allina Health Servs. v. Price, 863 F.3d 937, 938 (D.C. Cir. 2017), aff'd sub nom. Azar v. Allina Health Servs., 587 U.S. 566 (2019).

Hospitals are reimbursed for care provided to Part A beneficiaries under the prospective payment system ("PPS"). In broad strokes, PPS sets "a fixed rate for treating each Medicare patient, based on the patient's diagnosis" and what "an efficiently run hospital, in the same region, would expend to treat a patient with the same diagnosis." Empire Health, 597 U.S. at 429; see 42 U.S.C. § 1395ww(d)(1)–(4)). Because low-income patients are often more expensive to treat than higher-income ones, hospitals that treat a disproportionately high number of low-income patients may recover a Disproportionate Share Hospital ("DSH") adjustment in

addition to their standard Medicare reimbursement. 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). The upshot is that hospitals are reimbursed at "higher-than-usual rates when they serve a higher-than-usual percentage of low-income patients." Empire Health, 597 U.S. at 428.

Whether a hospital qualifies for the DSH adjustment—and, if so, the amount of the adjustment—depends on the hospital's "disproportionate patient percentage," which "is statutorily defined as the sum of two fractions, often called the 'Medicare fraction' and the 'Medicaid fraction.'" Catholic Health Initiatives Iowa Corp. v. Sebelius, 718 F.3d 914, 916 (D.C. Cir. 2013); see also 42 U.S.C. § 1395ww(d)(5)(F)(v)–(iv). At a very high level, the Medicare fraction captures the "proportion of a hospital's Medicare patients who have low incomes," while the Medicaid fraction captures the "proportion of a hospital's patients who are not entitled to Medicare and have low incomes." Empire Health, 597 U.S. at 429–30.

The Medicare fraction is calculated annually by CMS. See 42 C.F.R. § 412.106(b)(2). After CMS publishes the Medicare fraction, Medicare administrative contractors ("MACs") "compute the Medicaid fraction based on hospitals' year-end cost reports, sum up the fractions, and determine a hospital's entitlement to a DSH adjustment for the relevant year and the amount of any adjustment." Battle Creek Health Sys. v. Kennedy, 151 F.4th 464, 467 (D.C. Cir. 2025); see 42 C.F.R. 412.106(b)(4)–(5). MACs then inform each hospital of their final reimbursement amounts—including final DSH adjustments—through a notice of program reimbursement ("NPR"). See 42 C.F.R. § 405.1803(a).

A hospital dissatisfied with its reimbursement can appeal to the Provider Reimbursement Review Board. The Board has jurisdiction to review, among other things, a "final determination" "as to the amount of [Medicare] payment." 42 U.S.C. § 1395oo(a)(1)(A)(ii). An NPR, for instance, is a final payment determination. Battle Creek, 151 F.4th at 472. Appeals

must generally be commenced within "180 days after notice of the . . . final determination." 42 U.S.C. § 1395oo(a)(3). A provider may later obtain judicial review of the "final decision of the Board." Id. § 1395oo(f)(1).

B. 2023 Final Rule

The Medicare statute defines the Medicare fraction by reference to patients who "were entitled to benefits under part A." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). Whether Part C enrollees remain "entitled to benefits under part A"—such that days spent treating those individuals should be counted in a hospital's Medicare fraction—has been the subject of significant litigation over the past two decades. See Montefiore Med. Ctr. v. Kennedy ("Montefiore I"), No. 24-cv-1810 (LLA), 2025 WL 2801237, at *3–5 (D.D.C. Sept. 30, 2025) (summarizing dispute).

On June 9, 2023, HHS published a final rule providing that, for pre-2014 DSH adjustments, Part C beneficiaries are treated as entitled to Part A benefits and therefore must be included in the Medicare fraction. See Medicare Program; Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, 88 Fed. Reg. 37772, 37773 (June 9, 2023) ("2023 Final Rule," "Final Rule," or "Rule"). The Rule, which became effective on August 8, 2023, did not calculate any hospital's DSH adjustment. Instead, HHS explained that hospitals would receive NPRs for pre-2014 years applying the 2023 Final Rule and could thereafter appeal those payment determinations. Id. at 37787–88.

C. Board Proceedings

Instead of waiting for NPRs, Plaintiffs appealed the Rule itself to the Board in early 2024. The Board dismissed their appeals. It first concluded that the appeals were untimely, as they were brought more than 180 days after the Rule was published. And it lacked jurisdiction

over the appeals regardless, the Board reasoned, because the Rule was not a "final determination . . . as to the amount of . . . payment" under 42 U.S.C. § 1395oo(a)(1)(A)(ii). See ECF No. 6, San Gabriel Am. Compl. ("SG Compl."), Ex. B at 6 & n.19, Ex. C at 6 & n.20, Ex. D at 6 & n.19; ECF No. 1, Lake Charles Compl. ("LC Compl."), Ex. A at 6 & n.20.

D. Procedural History

Dissatisfied with the Board's decisions, Plaintiffs brought two separate suits against HHS which were eventually consolidated. The operative complaints assert subject-matter jurisdiction under 42 U.S.C. § 1395oo(f) and advance identical claims: Count I challenges the Board's dismissal orders, while Count II challenges the 2023 Final Rule itself as arbitrary, capricious, and contrary to law. See SG Compl. ¶¶ 3, 45–49; LC Compl. ¶¶ 2, 42–47. At bottom, Plaintiffs request reversal of the Board's dismissal orders and vacatur of the 2023 Final Rule. See SG Compl. at 30–31; LC Compl. at 25–26.

In August 2024, the Court stayed the consolidated case pending the D.C. Circuit's decision in Battle Creek. With that opinion now published, the Department has moved to dismiss under Federal Rules of Procedure 12(b)(1) and 12(b)(6). See Mot. to Dismiss at 1. Plaintiffs oppose. See Pls.' Opp. at 1. After briefing concluded, another court in this District vacated the 2023 Final Rule and remanded it to HHS. See Montefiore Med. Ctr. v. Kennedy ("Montefiore II"), No. 24-cv-1810 (LLA), 2026 WL 2547056, at *14 (D.D.C. Aug. 28, 2026).

## II. Legal Standards

Dismissal under Rule 12(b)(1) is warranted if the plaintiff fails to prove that the Court has subject-matter jurisdiction to hear its claims. Green v. Stuyvesant, 505 F. Supp. 2d 176, 177 (D.D.C. 2007). Under Rule 12(b)(6), a complaint must be dismissed if its well-pleaded facts, taken as true, fail to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009). In resolving a motion to dismiss, the Court may consider the complaint, documents attached to or incorporated in the complaint, and matters of which the Court may take judicial notice. Langeman v. Garland, 88 F.4th 289, 291 (D.C. Cir. 2023). Finally, the Court reviews the Board's decisions under the standards set forth in the Administrative Procedure Act, see 42 U.S.C. § 1395oo(f)(1), and will therefore uphold those decisions unless they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A).

## III. Analysis

### A. Count I – Board's Dismissal Orders

The Board did not err in dismissing Plaintiffs' appeals. Hospitals cannot appeal every agency action that may someday affect DSH reimbursement. Only a "*final* determination of the Secretary as to the amount of [DSH] payment" may be appealed to the Board, 42 U.S.C. § 1395oo(a)(1)(A)(ii) (emphasis added), and Battle Creek makes clear that the 2023 Final Rule Plaintiffs appealed is no such thing.

In Battle Creek, a group of hospitals lodged an administrative appeal concerning CMS's then-recently published 2007 Medicare fractions. The Board dismissed the appeal because the hospitals did not challenge a final payment determination, and the D.C. Circuit ultimately upheld that dismissal. See 151 F.4th at 468–72. "With the DSH adjustment," the court explained, "a hospital's eligibility for the adjustment and the amount of the adjustment (if any), is not set until a hospital receives its NPR . . . . *Then, and only then*, is there a 'final determination of the Secretary as to the amount of the payment' to be made to the hospital." Id. at 469–70 (emphasis added) (quoting 42 U.S.C. § 1395oo(a)(1)(A)(ii)). In short, an NPR must form the basis of a hospital's DSH-related appeal.

Plaintiffs, however, challenged the 2023 Rule directly—instead of waiting to first receive the NPRs contemplated in the Rule—and make no serious attempt at distinguishing Battle Creek. Nor could they, as Battle Creek is on all fours with the case. The D.C. Circuit held that in the same Medicare payment context (DSH adjustments) involving the same underlying dispute (the inclusion of Part C days in the Medicare fraction) and the same statute governing Board review (42 U.S.C. § 1395oo(a)(1)(A)(ii)), the Board correctly dismissed the hospitals' administrative appeals because the hospitals appealed from something other than NPRs. See 151 F.4th at 468–72. The only difference is the agency action that was appealed to the Board: Battle Creek involved CMS's published, hospital-specific Medicare fractions for a past fiscal year, whereas Plaintiffs in this action appealed a generally applicable rule governing *how* CMS would calculate Medicare fractions for certain past fiscal years. But that distinction makes this an even easier case, as the challenged action here sits even *farther* upstream from NPRs—i.e., the "final determination" of DSH-related payments. Id. at 472. Battle Creek thus requires that the Board's decisions dismissing Plaintiffs' appeals be upheld. See United States v. Torres, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges . . . are obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting en banc, or the Supreme Court, overrule it.").

Plaintiffs counter that the 2023 Final Rule was functionally a "final determination" as to payment—such that the Board could review their challenge to the Rule—because hospitals could use the Rule to "create estimates" of their pre-2014 DSH adjustments. Opp. at 9. But Battle Creek forecloses this argument. Whether the 2023 Final Rule allows hospitals to "obtain a close estimate of their DSH adjustment amount" by doing "the math themselves" is irrelevant because "§ 1395oo(a)(1)(A)(ii) give[s] the Secretary [of HHS or his delegee]—not affected hospitals—responsibility for making the 'final determination,'" which "does not happen until issuance of an

NPR." Battle Creek, 151 F.4th at 472. Plaintiffs' appeals to the Board were therefore premature.

In any event, even if the Rule were an appealable "final determination," the Board correctly dismissed Plaintiffs' appeals as untimely. A provider must "file[] a request for a hearing [with the Board] within . . . 180 days after notice of the Secretary's final determination." 42 U.S.C. § 1395oo(a)(3). When a document published in the Federal Register constitutes a "final determination of the Secretary," the "appeal period begins on the date of publication and ends 180 days from that date." Provider Reimbursement Rev. Bd. R. 4.3.2; see 42 U.S.C. § 1395oo(e) (granting the Board rulemaking authority to carry out § 1395oo). Yet Plaintiffs waited more than 180 days after the Final Rule was published to commence their appeals. See Opp. at 2. Because Plaintiffs "violated the Board's rules, the Board did not act arbitrarily and capriciously by dismissing [their] appeal[s]." See Atrium Health Car. Med. Ctr. v. Kennedy, No. 23-cv-1742 (CRC), 2025 WL 2029801, at *4 (D.D.C. July 21, 2025) (collecting cases).

Plaintiffs contend that notice should run from the Rule's effective date—not the date of publication. See Opp. at 7, 11. Not so. "Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents," Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947), "regardless of when [they] become[] effective," Humane Soc'y of the U.S. v. U.S. Dep't of Agric., 41 F.4th 564, 571 (D.C. Cir. 2022); see 44 U.S.C. § 1507. Because the Rule was published on June 9, 2023, Plaintiffs had until December 6, 2023 to challenge the Rule. So their early-2024 Board appeals were untimely.

B. Count II – 2023 Final Rule

Plaintiffs also challenge the legality of the 2023 Final Rule. See SG Compl. ¶¶ 47–49; LC Compl. ¶¶ 45–47. But the Court lacks jurisdiction to hear this claim.

In general, the Medicare statute serves as the exclusive source of federal court jurisdiction over Medicare cases. See Am. Hosp. Ass'n v. Azar, 895 F.3d 822, 825 (D.C. Cir. 2018) (citing 42 U.S.C. §§ 405(g), 405(h), 1395ii). As relevant here, the Medicare statute limits judicial review to "final decision[s] of the Board." 42 U.S.C. § 1395oo(f)(1). Because the Board never passed on the merits of Plaintiffs' challenge to the 2023 Final Rule, neither can this Court. See, e.g., Battle Creek, 151 F.4th at 465; High Country Home Health, Inc. v. Thompson, 359 F.3d 1307, 1315 (10th Cir. 2004); Good Samaritan Hosp. Reg'l Med. Ctr. v. Shalala, 85 F.3d 1057, 1062 (2d Cir. 1996); Allina Health Sys. v. Becerra, No. 23-cv-2144 (LLA), 2024 WL 4332061, at *7–8 (D.D.C. Sept. 27, 2024). Plaintiffs have conceded as much by failing to respond to the Government's jurisdictional arguments. See Conyers v. Westphal, 235 F. Supp. 3d 72, 76 (D.D.C. 2017) (Cooper, J.).

Article III of the Constitution, moreover, limits federal courts' jurisdiction to "actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). If a claim becomes "moot because it no longer presents a live controversy, the court lacks jurisdiction to entertain the claim, and must dismiss it." Han v. Lynch, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (K.B. Jackson, J.). The 2023 Final Rule has already been vacated, see Montefiore II, 2026 WL 2547056, at *14, and thus "no longer exists," making Plaintiffs' challenge to that rule and request for vacatur "classically moot for lack of a live controversy," Akiachak Native Cmty. v. U.S. Dep't of Interior, 827 F.3d 100, 106 (D.C. Cir. 2016); see also Ctr. for Biological Diversity v. Raimondo, No. 18-cv-112 (JEB), 2024 WL 324103, at *4 (D.D.C. Jan. 29, 2024) (explaining that a "claim is straightforwardly moot" when the challenged agency action "has already been vacated").

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 15, 2026